UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DR. TAMIKA BRADLEY                                                    PLAINTIFF

V.                                              CIVIL ACTION NO. 3:21-CV-643-DPJ-FKB

DR. WILLIAM BYNUM, in his individual                                DEFENDANTS
capacity; DR. DANIEL WATKINS, in his
individual capacity; and
JACKSON STATE UNIVERSITY

ORDER

Plaintiff Dr. Tamika Bradley says she endured a sex-based hostile work environment,

quid pro quo harassment, a discriminatory and retaliatory failure to grant tenure, and a tenure

process that violated her procedural-due-process rights.  She sued her former employer, Jackson

State University ("JSU"), its then-president, Dr. William Bynum, and her former supervisor, Dr.

Daniel Watkins.  This matter is before the Court on JSU and Bynum's Motion to Dismiss [30]

and Watkins's Motion to Partially Dismiss [32], both brought under Federal Rule of Civil

Procedure 12(b)(6).  The motions are granted in part.

I.      Background

According to the Complaint, JSU hired Bradley in 2002 as a faculty instructor in its

Department of Health, Physical Education, and Recreation.  2d Am. Compl. [26] ¶ 7.  In 2013,

JSU named Bradley chair of the department and placed her in a tenure-track position.  *Id.* ¶ 8.

That placement triggered a probationary period to apply for tenure and promotion.  *Id.*  During

this period, Watkins, the dean of JSU's College of Education, named Bradley the associate dean

of the college.  *Id.* ¶ 10.  Consequently, Bradley moved into the same building as Watkins.  *Id.*

Once in the same building, Bradley says Watkins frequently subjected her to sexual

harassment, including "stick[ing] his hand inside Bradley's blouse(s), kiss[ing] Bradley on her

cheeks," and "grab[bing] Bradley's hand and plac[ing] it on his erect penis."  *Id.* ¶ 11.  Watkins also made several inappropriate comments to Bradley and, on one occasion, exposed his erect penis and touched it in her presence.  *Id.*

To avoid further harassment from Watkins, Bradley says she resigned from the interim-associate-dean and department-chair positions on June 30, 2018.  *Id.* ¶ 20.  As a result, Bradley's salary dropped $32,000.  *Id.*  Bradley claims that the loss of these positions constituted a constructive discharge.

In September 2018, JSU informed Bradley that she was in her terminal year for obtaining tenure.  *Id.* ¶ 21.  According to Bradley, Watkins manipulated the tenure-review process and otherwise interfered with her opportunity to obtain tenure and a promotion.  *Id.* ¶¶ 29, 34–35.  On April 15, 2019, Bradley learned that tenure had been denied.  *Id.* ¶ 15.  She appealed the decision, but on October 16, 2019, Defendant Bynum rejected the appeals committee's recommendation that Bradley receive tenure.  *Id.* ¶ 60.  Bradley believes JSU and Bynum treated her less favorably during the tenure process than similarly situated male applicants.  *Id.* ¶¶ 60–63.

On April 7, 2020, Bradley initiated an EEOC charge alleging discrimination based on sex and retaliation.  EEOC Charge [30-1] at 1.  She then filed this suit and, later, a Second Amended Complaint on November 4, 2021, generally citing Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983.  *See* 2d Am. Compl. [26] ¶ 1.  Defendants now seek dismissal under Rule 12(b)(6), and the Court has jurisdiction to consider their motions.

II.     Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Rule 8 . . .

demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

In considering a Rule 12(b)(6) motion, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Overcoming a Rule 12(b)(6) motion requires "[f]actual allegations . . . rais[ing] a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations and footnote omitted). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

III.     Analysis

A.     The Low-Hanging Fruit

Bynum and Watkins seek dismissal of the Title VII claims against them, but Bradley says she never intended to assert such claims. *See* Pl.'s Opp'n Mem. [38] at 2, n.1. The motions are therefore moot as to these claims.

In addition, Bradley leaves the following arguments unanswered:  (1) JSU is not liable under § 1983 because it is not a "person" and is otherwise protected by the Eleventh Amendment; (2) Bradley failed to exhaust her Title VII retaliation claim against JSU; and (3) Bynum is immune from Bradley's failure-to-supervise claim.  These arguments appear to be meritorious, and "[a] plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims."  *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022); *accord Alexander v. Brookhaven Sch. Dist.*, No. 3:07-CV-640-DPJ-JCS, 2009 WL 224902, at *4 (S.D. Miss. Jan. 28, 2009).

That leaves Title VII claims against JSU for hostile work environment, quid pro quo harassment, and sex discrimination (related to the tenure/promotion decision), plus § 1983 claims against Bynum and Watkins.  As to these remaining claims, JSU seeks an order dismissing all Title VII causes of action brought against it for Bradley's failure to timely exhaust administrative remedies; Bynum and Watkins both assert qualified immunity as to Bradley's procedural-due-process claims related to the tenure/promotion decision; and Watkins contends, in rebuttal, that the § 1983 retaliation claim against him was never properly pleaded.  The Court will take the motions in that order.

B.      JSU's Motion to Dismiss Title VII Claims for Failure to Exhaust

"Before a plaintiff may file suit in federal court under . . . Title VII . . . , the plaintiff must first exhaust her administrative remedies by filing a charge of discrimination with the EEOC." *Jennings v. Towers Watson*, 11 F.4th 335, 342 (5th Cir. 2021) (citing *Melgar v. T.B. Butler Publ'g Co.*, 931 F.3d 375, 378–79 (5th Cir. 2019)).  For employees like Bradley, the charge must be filed within 180 days of "the alleged unlawful employment practice."  42 U.S.C. § 2000e-5(e)(1).  Any practices occurring before that 180-day window may not be pursued.  *Id.*  Here,

Bradley's charge was filed April 7, 2020.  Thus, absent other arguments, it would capture only those practices occurring on or after October 10, 2019.

       1.      Title VII Sex-Discrimination Count[1]

Bradley's "sex-discrimination" count against JSU contends that the school "treated similarly situated males more favorabl[y] than [it] treated her when [it] reviewed her application for tenure and promotion."  2d Am. Compl. [26] ¶ 82.  Bradley's Title VII EEOC charge did address this alleged conduct, but it was filed nearly a year after the disputed decision.  *See* EEOC Charge [30-1] at 3 (noting that JSU denied tenure in April 2019).

Bradley never really disputes the delay, but she now contends that her "claims are premised on the Lilly Ledbetter Fair Pay Act of 2009."  Pl.'s Opp'n Mem. [38] at 1–2.  Under the Ledbetter Act,

> [A]n unlawful employment practice occurs, with respect to discrimination in compensation . . . when a discriminatory compensation decision . . . is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e-5(e)(3)(A) (emphasis added).  Thus, according to Bradley, because "the denial of tenure and promotion to Associate Professor negatively affected [her] compensation," the EEOC charge could be filed within 180 days of any diminished paycheck.  Pl.'s Opp'n Mem. [38] at 6 (citing *Gentry v. Jackson State Univ.*, 610 F. Supp. 2d 564 (S.D. Miss. 2009)).

---

[1] Bradley's Complaint includes a section entitled "CAUSE[S] OF ACTION[]" that includes eight subheadings like "TITLE VII QUID PRO QUO HARASSMENT."  2d Am. Compl. [26] at 22.  For clarity, this Order will reference "counts" when referring the subheadings listed on pages 22 through 26 of the Complaint.  *See* Fed. R. Civ. P. 10(b).

As JSU notes, the Fifth Circuit has rejected Bradley's exact argument and the holding in *Gentry* upon which she relies.  In *Niwayama v. Texas Tech University*, the plaintiff argued that denying "tenure had consequences for her compensation" and thus "constituted a 'discriminatory compensation decision' under the Ledbetter Act."  590 F. App'x 351, 356 (5th Cir. 2014) (per curiam).  Niwayama acknowledged that her argument represented "a minority view," and the Fifth Circuit refused to adopt it:

> Indeed, Niwayama's argument is contrary to the overwhelming weight of authority on this issue.  Specifically, the Tenth Circuit explained that under the Ledbetter Act "hiring, firing, promotion, demotion, and transfer decisions, though often touching on pay, should and do accrue as soon as they are announced."  Similarly, the District of Columbia Circuit held that the Ledbetter Act's use of "the phrase 'discrimination in compensation' means paying different wages or providing different benefits to similarly situated employees, not promoting one employee but not another to a more remunerative position."  The Third Circuit also rejected an argument similar to Niwayama's because a more "expansive interpretation of 'other practice' . . . would potentially sweep all employment decisions under the 'other practice' rubric" set forth in the Ledbetter Act.  Finally, this Court in an unpublished opinion held that the Ledbetter Act does not apply to "discrete acts" by employers such as "termination, failure to promote, denial of transfer, and refusal to hire."

*Id.* (alterations in original) (footnotes omitted) (rejecting *Gentry*, 610 F. Supp. 2d at 567).

Though *Niwayama* is unpublished and therefore non-binding, its reasoning is sound and reflects the majority view.  The fact that the tenure decision impacted Bradley's future compensation does not render these claims subject to the Ledbetter Act; rather, the Act only modifies the accrual period for pay-disparity claims.  Bradley makes no other arguments in opposition to JSU's motion on this count; JSU's motion is granted.[2]

---

[2] Bradley's Complaint mentions neither the Ledbetter Act nor disparate compensation.  If her memorandum reflects a new claim, it is unclear in this circuit whether it can be asserted in response to dispositive motions.  *Compare Pierce v. Hearne Ind. Sch. Dist.*, 600 F. App'x 194, 200 (5th Cir. 2015) (per curiam) (holding that new claims raised in response to a dispositive motions "should be construed as a request for leave to amend the complaint"), *with Jackson v. Gautreaux*, 3 F.4th 182, 189 (5th Cir. 2021) ("[I]t's unclear how cases like Pierce are consistent

2.      Title VII Hostile-Work-Environment Count

The parties seem to agree that the last alleged act of sexual harassment occurred on September 10, 2018.  On that day, Watkins visited Bradley (after she had resigned her administrative positions) and told her "he was angry with her for leaving him [but] . . . would always have feelings for her."  2d Am. Compl. [26] ¶ 24.  That event allegedly happened more than a year before the October 19, 2019 statutory window, so JSU says the hostile-work-environment claim was never properly exhausted.

Bradley essentially asserts the continuing-violation doctrine to avoid dismissal.  "Hostile environment claims are different in kind from discrete acts [of discrimination like the failure to promote].  Their very nature involves repeated conduct."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).  "The 'unlawful employment practice' therefore cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."  *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *Id.* at 117.

---

with our rule of orderliness and our numerous published precedents holding litigants forfeit arguments raised for the first time at summary judgment."); *id.* (noting that such relief is normally reserved for pro se plaintiffs).  Here, the Court will not construe Bradley's response as a motion seeking leave to amend.  Under Uniform Local Rule 7(b)(3)(C), a motion cannot be asserted in the body of a response.  *See Loomis v. Starkville Miss. Pub. Sch. Dist.*, 150 F. Supp. 3d 730, 753 & n.10 (N.D. Miss. 2015) (citing L.U. Civ. R. 7(b)(3)) (construing new claims as motion for leave to amend but denying leave in part because local rule requires separately filed motion).  Moreover, Bradley failed to offer a proposed amend complaint as Local Rule 15 requires.  Finally, it is not clear whether Bradley is attempting to assert a new cause of action for disparate compensation or is simply arguing that the impact on her compensation makes her claims timely.  The latter seems more likely because her Complaint fails to plead a plausible claim for disparate compensation.

Bradley says the effects of the harassment continued to occur during the filing period. According to her, Watkins's severe and pervasive sexual harassment forced her to quit her job as associate dean, which impacted her compensation in every paycheck she received from then on. Pl.'s Opp'n Mem. [38] at 7–8.  She further argues that her "compensation was negatively impacted again after she received Bynum's October 17, 2019, letter informing her that he had not changed his decision on her application for tenure and promotion." *Id.* at 8.

But "each paycheck at an allegedly discriminatory rate [constitutes] a separate, discrete act of discrimination." *Niwayama*, 590 F. App'x at 356.  And, in this circuit, an otherwise-time-barred hostile-work-environment claim cannot be extended by an act "related to disparate treatment [instead of] harassing conduct." *Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 913 (5th Cir. 2000); *accord Jackson-Hall v. Moss Point Sch. Dist.*, No. 3:11-CV-42-DPJ-FKB, 2012 WL 1098524, at *3 (S.D. Miss. Apr. 2, 2012) (declining to treat an allegedly discriminatory termination as continuation of a hostile work environment).

In any event, Bradley did not plead a wage claim, and none of the alleged acts of harassment that she says affected her compensation occurred within the 180-day window.  The constructive discharge occurred nearly two years before she filed her EEOC charge, and she was denied tenure on April 15, 2019 (about one year before the charge).  In the end, the last act of alleged sexual harassment from Watkins occurred in September 2019, more than 180 days before she filed her EEOC charge.  JSU's motion to dismiss the hostile-work-environment claim is granted.

### 3.     Title VII Quid Pro Quo Harassment Count

Bradley contends that JSU denied her tenure and promotion because she refused Watkins's sexual advances.  *See* 2d Am. Compl. [26] ¶ 71.  In addition to noting the lack of

pleaded facts demonstrating causation, JSU argues that Bradley failed to timely exhaust her quid pro quo harassment claim.  Bradley responds by adopting her compensation arguments regarding the hostile-work-environment claim and asserting—with no supporting argument or authority— that the claim accrued in October 2019 when Bynum denied her appeal of the tenure/promotion decision.  Pl.'s Opp'n Mem. [38] at 8.

Even assuming quid pro quo claims can constitute continuing violations—which is doubtful—the paychecks would not extend the claim for the reasons stated in the previous section.[3]  Moreover, the fact that Bradley later learned that her appeal of the adverse tenure/promotion decision had been denied does not extend the accrual date of claims related to that decision.  *See Delaware State College v. Ricks*, 449 U.S. 250, 261 (1980) (holding that "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods").[4]  Because JSU notified Bradley that tenure had been denied before the limitations period, her Title VII quid pro quo claim based on that decision must be dismissed for failure to exhaust.  JSU is dismissed.

---

[3] The parties do not address this issue, but quid pro quo harassment claim arises when an employee "suffer[s] a 'tangible employment action' . . . causally related to the acceptance or rejection of . . . sexual harassment."  *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 170 (5th Cir. 2018) (quoting *Casiano v. AT&T Corp.*, 213 F.3d 278, 283–84 (5th Cir. 2000)).  Courts have held that such claims are not subject to the continuing-violation doctrine.  *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1111 (9th Cir. 1998); *see also Johnson v. Watkins*, No. 3:07-CV-621-DPJ-JCS, 2009 WL 1507572, at *4 n.3 (S.D. Miss. May 29, 2009) ("Unlike hostile work environment claims, quid pro quo harassment must occur within the 180 day window prior to Plaintiff's EEOC charge of administration." (citations omitted)).

[4] Though the Ledbetter Act legislatively abrogated *Ricks* with respect to compensation claims, its notice holding remains valid.  *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1179 (10th Cir. 2011) ("The limitations period still accrues with the employer's announcement and 'the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods . . . [and neither does] [t]he existence of careful procedures to assure fairness.'" (alterations in original) (quoting *Ricks*, 449 U.S. at 261)).

C.       Watkins's and Bynum's Motions to Dismiss

Bradley asserts § 1983 claims against both Watkins and Bynum.  Section 1983 provides a

cause of action for plaintiffs who can show "(i) deprivation of a federal right[] [by] (ii) action

under color of state law."  *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (citing *Gomez*

*v. Toledo*, 446 U.S. 635, 640 (1980)).  But § 1983 claims against officials in their individual

capacity are subject to qualified immunity, and both Watkins and Bynum have asserted that

defense to some of Bradley's claims.  Though Watkins's and Bynum's motions (and the related

briefing) overlap to some extent, they are not identical.  Accordingly, the Court will first address

the mutually applicable qualified-immunity defenses as to the procedural-due-process arguments.

It then takes up the claims premised on equal protection, which also contain some overlap.  The

balance of the motions will be addressed separately.

1.       Procedural-Due-Process Count

Bradley contends that Watkins and Bynum violated her right to procedural due process

by "depriv[ing] her of a right to a fair tenure process that did not include biased participants."  2d

Am. Compl. [26] ¶ 88.  As to Bynum, specifically, she argues in her memorandum that "the Due

Process [C]lause required Bynum to ensure Jackson State followed the tenure and promotion

process outlined in its Faculty Handbook."  Pl.'s Opp'n Mem. [38] at 10.  While that theory was

not reflected in Bradley's due-process count, it was factually pleaded elsewhere in her

Complaint.  *See, e.g.*, 2d Am. Compl. [26] ¶ 29.  Both Watkins and Bynum say this count must

be dismissed based on qualified immunity.

Qualified immunity "adds a wrinkle to § 1983 pleadings when . . . relevant."  *Arnold*, 979

F.3d at 266–67.  The doctrine "shields government officials from liability when they are acting

within their discretionary authority and their conduct does not violate clearly established

10

statutory or constitutional law of which a reasonable person would have known." *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019) (quoting *Gates v. Tex. Dep't of Protective & Reg. Servs.*, 537 F.3d 404, 418 (5th Cir. 2018)).  Defendants asserting the defense "must first satisfy [their] burden[s] of establishing that the challenged conduct was within the scope of [their] discretionary authority." *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) (alterations in original) (quoting *Cherry Knoll*, 922 F.3d at 318).  That point is not disputed.

"[T]he burden then shifts to the plaintiff to rebut the qualified immunity defense." *Cherry Knoll*, 922 F.3d at 318.  That requires showing "that the state actor (1) violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Can. Hockey, L.L.C. v. Marquardt*, No. 20-20530, 2022 WL 252186, at *3 (5th Cir. Jan. 26, 2022) (citing *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016)).  A plaintiff only "must plead qualified-immunity facts with the minimal specificity that would satisfy *Twombly* and *Iqbal*." *Arnold*, 979 F.3d at 267.  The Court may address its requirements in either order. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

"[T]he salient question . . . is whether the state of the law [at the time] gave [the defendants] fair warning" that their alleged conduct violated the federal standard. *Amador v. Vasquez*, 961 F.3d 721, 729 (5th Cir. 2020) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); *accord Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc).  "The rule must [have been] 'settled law,' which means . . . dictated by 'controlling authority' or 'a robust "consensus of cases of persuasive authority."'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citations omitted) (first quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); then quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); and then quoting *id.* at 742).

11

Notably here, Bradley "bears the burden of demonstrating that clearly-established law placed defendants on notice that they were violating [her] protected property interest." *Wigginton v. Jones*, 964 F.3d 329, 338 (5th Cir. 2020) (citing *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019)), *cert. denied sub nom. Wigginton v. Univ. of Miss.*, 141 S. Ct. 1268 (2021). "To show the law is clearly established, a party must 'identify a case where an officer acting under similar circumstances . . . was held to have violated'" the plaintiff's federal rights. *Nerio v. Evans*, 974 F.3d 571, 575 (5th Cir. 2020) (quoting *Wesby*, 138 S. Ct. at 590).

Turning to the substantive law, "[t]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Taylor v. McDonald*, 978 F.3d 209, 212 (5th Cir. 2020) (quoting *Wilkerson v. Goodwin*, 774 F.3d 845, 851 (5th Cir. 2014)). "Public employees are only entitled to procedural due process protections if they can identify a constitutionally protected property interest." *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 344 (5th Cir. 2006) (citing *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 222 (1985)). "Property interests are created and defined by 'existing rules or understandings that stem from an independent source such as state law.'" *Wigginton v. Jones*, 964 F.3d 329, 336 (5th Cir. 2020) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

The salient question is whether Bradley was essentially "guaranteed tenure" and a promotion such that she had a property interest in those outcomes. *Id.* Where the source of the alleged property interest "is not sufficiently restrictive to create a property interest in the underlying decision, there can be no property interest in the procedure used to make that decision." *Teigen v. Renfrow*, 511 F.3d 1072, 1081 (10th Cir. 2007). "[T]he Supreme Court has

explained that we are to look for 'explicitly mandatory language'" creating the property interest. *Wigginton*, 964 F.3d at 337 (quoting *Ridgely v. FEMA*, 512 F.3d 727, 735 (5th Cir. 2008)).

Under Mississippi law, "'contract rights [can] constitute enforceable property interests,' and 'employee manuals become part of the employment contract, [potentially] creating contract rights to which employers may be held.'" *Id.* at 336 (quoting *Klingler v. Univ. of S. Miss.*, 612 F. App'x 222, 227–28 (5th Cir. 2015) (per curiam)). But "not all employment contracts or manuals rise to a vested property right": the Mississippi Court of Appeals has explicitly held that '[t]he mere existence of a faculty handbook does *not* create [a protected property interest].'" *Id.* (alterations in original) (quoting *Suddith v. Univ. of S. Miss.*, 977 So. 2d 1158, 1171 (Miss. Ct. App. 2007)).

In *Klinger v. University of Southern Mississippi*, for example, the Fifth Circuit considered the case of a tenure-track professor who, after being accused of making an incendiary statement, was ultimately terminated. 612 F. App'x at 224–25. Given the early termination, the professor was never given an opportunity to apply for tenure; accordingly, he brought suit, alleging, among other claims, that the school's faculty handbook entitled him to a "performance review[]" and "a right to satisfy the tenure criteria." *Id.* 227–28. The Fifth Circuit rejected this argument, holding:

> Mississippi law and the Handbook do not create a legitimate expectation of attaining tenure, even when the criteria for tenure are satisfied. It follows, *a fortiori,* that Klingler could have no legitimate expectation in an opportunity to satisfy the tenure criteria. If Saunders and Lyman afforded Klingler the opportunity to satisfy the tenure criteria, . . . the decision over his continued employment would [still] be entirely within the discretion of the board, and he would have no legitimate expectation in obtaining tenure.

*Id.* at 228.

13

Bradley makes no allegation that the Faculty Handbook guaranteed her tenure.  Rather, she says that the handbook's "language [as to] the tenure and promotion *process* [was] mandatory."  Pl.'s Opp'n Mem. [38] at 10 (emphasis added).  But the question is not whether the process was mandatory; the question is whether the handbook contained mandatory language creating an expectation that Bradley would receive tenure and a promotion—i.e., whether it created a property interest.

Regardless, Bradley never identifies the handbook language that makes the process mandatory.  Nor has she cited any legal authority clearly establishing that mandatory process creates a property interest.  *See Jones v. City of Houston*, 756 F. App'x 341, 347 (5th Cir. 2018) ("When a public official pleads qualified immunity, the plaintiff bears the burden of citing authority that clearly establishes the unlawfulness of the alleged violation.").  Defendants are therefore entitled to qualified immunity from the procedural-due-process count; their motions are granted as to that claim.

### 2.    Denial of Equal Protection

In her listed causes of action, Bradley's Complaint identifies two alleged acts under the heading "Sex Discrimination":  (1) Watkins's alleged sexual harassment, 2d Am. Compl. [26] ¶ 81, and (2) the claim that Bynum and JSU "treated similarly situated males more favorabl[y] than they treated her when they reviewed her application for tenure and promotion," *id.* ¶ 82.  She also separately asserts § 1983 causes of action against Watkins for quid pro quo harassment, *id.* ¶ 71, and hostile work environment, *id.* ¶ 74.  Those counts do not mention Bynum.

Unfortunately, the Complaint never explains which constitutional right supports these sex-based claims, but Bradley clarifies in her memorandum that they flow from the Equal Protection Clause.  Pl.'s Opp'n Mem. [39] at 4.  If so, that would be a proper basis:

14

> [While] Title VII . . . does not create liability in individual supervisors and co-workers who are not the plaintiffs' actual employers, state and local officials can be held individually liable under 42 U.S.C. § 1983 for violating the Equal Protection Clause of the Fourteenth Amendment by discriminatory acts against those who work under them. . . . [T]he Equal Protection Clause protects [state and local] employees from sex-based workplace discrimination, including hostile work environments and disparate treatment.

*Raspardo v. Carlone*, 770 F.3d 97, 113–14 (2d Cir. 2014) (citations omitted) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010)); *accord Hosemann*, 812 F. App'x at 238 ("Critically, '[u]nlike Title VII, § 1983 applies to individuals.'" (quoting *Sims v. City of Madisonville*, 894 F.3d 632, 640–41 (5th Cir. 2018) (per curiam))).

Watkins never addresses the equal-protection-based counts in his legal memoranda, limiting his motion instead to the procedural-due-process count. *See, e.g.*, Def.'s Mem. [33] at 7–8 (summarizing relief sought). Accordingly, the § 1983 sex-discrimination, hostile-work environment, and quid pro quo counts asserted against him survive his motion.[5]

As for Bynum, Bradley contends that he, too, failed to directly address the sex-discrimination count in his opening memorandum. *See* Pl.'s Opp'n Mem. [38] at 2. That is basically correct. Bynum filed a joint memorandum with JSU. While he generally invoked qualified immunity, the only specific argument he made for dismissing the sex-discrimination count was based on Title VII exhaustion. *See* Defs.' Mem. [31] at 11. That argument works for JSU but not Bynum.

Even in reply, Bynum never squarely applies his legal arguments to Bradley's sex-discrimination count; he argues instead that no causal connection exists between Watkins's alleged sexual harassment and the tenure decision. *See* Defs.' Reply [43] at 6. But that is not the

---

[5] The Complaint has two Title VII quid pro quo counts, but the second mentions only Watkins and could not, therefore fall under Title VII. The Court assumes Bradley intended a § 1983 claim. In any event, Watkins did not address it.

theory Bradley pleaded to support that claim; she averred that Defendants "treated similarly situated males more favorabl[y] than they treated her when they reviewed her application for tenure and promotion." 2d Am. Compl. [26] ¶ 82.  On this record, there is no basis to dismiss the § 1983 sex-discrimination count against Bynum.  As such, that count survives both motions.

>           3.        Retaliation

Bradley's "Retaliation" count makes two specific averments:  (1) "JSU retaliated against her after she gave interviews about Watkins' unlawful conduct to IHL and JSU investigators," *id.* ¶ 86, and (2) "[a]s a proximate consequence of the actions of Watkins, the Plaintiff suffered emotional harm," *id.* ¶ 87.  Those averments clearly indicate a Title VII claim against JSU, which the Court has now dismissed.  It is not, however, clear whether the second averment— regarding emotional harm caused by Watkins's "actions"—asserted a claim against him (presumably under § 1983).  Bradley says that it did and that Watkins never addressed that claim in his motion.

Here again, the count does not identify the statutory basis or the underlying federal right. Had it stated, for example, that the claim fell under the Equal Protection Clause and § 1983, then it would have been more apparent that the claim was asserted also against Watkins.  As worded, the count seems limited to a Title VII claim against JSU.  Watkins notes these ambiguities and argues that "[t]he only remaining matter on this portion of the Motion To Dismiss is a reply from the Plaintiff as to whether the Retaliation claim is a claim under Title VII, a constitutional claim, or both; and, whether the retaliation claim is being made against Dr. Watkins."  Def.'s Reply [42] at 2–3.  He says that reply should come in the form of a third amended complaint, which would essentially require a finding that he was not named in the retaliation count.  *Id.* at 4.

Case 3:21-cv-00334-DPJ-FKB   Document 44   Filed 08/02/22   Page 17 of 17
This creates a procedural wrinkle.  While the Court rarely considers grounds for dismissal a defendant first raises in rebuttal, a fair reading of the Complaint would not have given Watkins notice that he needed to separately address the retaliation count.  It also appears that the Complaint factually alleges a different type of retaliation against Watkins than what Bradley asserts against JSU in the retaliation count.  Bradley argues that Watkins retaliated because she rebuffed his sexual overtures, but that would be a quid pro quo claim.  Retaliation claims involve materially adverse employment actions taken against employees for engaging in protected activities (like speaking with investigators regarding alleged harassment).  *See generally Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).  Assuming § 1983 would recognize such a claim, Bradley pleaded no facts to support one against Watkins.

The Court finds that if Bradley intended a § 1983 retaliation claim against Watkins, she failed to properly plead it.  She may, however, seek leave to amend.

IV.    Conclusion

The Court has considered all arguments; any not addressed would not have changed this result.  Defendants' Motions [30, 32] are granted in part and otherwise denied.  If Bradley wishes to seek leave to amend, she must file a motion within 14 days of this Order.

**SO ORDERED AND ADJUDGED** this the 2nd day of August, 2022.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE